The first three cases are on submission. Jim Boniola v. Sessions, Jaffer, J-F-F-E-R v. Hergy, H-I-R-J-I, and Piscarella v. HSBC Securities, USA. The first case to be argued is Christine Taylor v. Financial Recovery Services. Good morning, Your Honor. Craig Sanders, Barchet Sanders for the Plaintiffs. The defendant in this case has made the entirety of their argument both to the district court and to the brief to this court about whether the debt at issue was static or dynamic, whether or not it was going to remain the same or increase over time. However, that is truly not the issue since, like all debtors, we would know, including the least sophisticated debtor, that credit card does, in fact, increase over time. There is interest in late fees if you fail to make the minimum payments or fail to make a payment in full at any given time. What the defendant is really stating is that during the six-month placement from Barclays Bank to the collection agency, they were instructed to maintain a static balance. We now know that because we've had discovery in a lawsuit and a record that shows that. The debtor, on the other hand, would not have been presented with those facts. At best, the debtor would have been able to draw an inference, which was noted by Judge Schofield in the decision below, that because the balance in each of the series of letters stayed consistent, that it was static. But that is discordant with what the debtor would have had as common knowledge, that they've been paying this credit card debt since they incurred it, that there were minimum payments, late fee charges, and other things going on. Since it's by inference alone that the debtor would have some belief that the debt was going to remain static, it's at least subject to two potential interpretations, only one of which would be correct, and thus is violative of the FDCPA. Even with the knowledge, however, that the debt was static in these series of letters, it doesn't tell the debtor what happens next. What happens on the placement from Barclays to the next collection agency? Will all the accrued interest and fees be now included in that balance? It doesn't tell us what will happen should this debt be sold to a debt buyer. Will that debt buyer change and now include interest and fees in any collection efforts? It also doesn't tell us what would happen on a legal placement. Would the lawyer seek to collect statutory interest or contract interest? None of these things have been disclosed. So to say that the debt is static is a misnomer. What— Was there any interest worth accruing, in fact? The interest is a creature of the contract between Barclays and the consumer. No, it's not a complicated question. Was interest, and were other charges accruing on the amounts that were stated to be owed? By contract and law, yes. The collection efforts—the instructions to the collection agency were not to seek to enforce those. Let me be clear. What you're saying is that in the initial contract, interest and fees would be accruing, but that once this got to the collection agency, the collection agency was not accruing interest on it. Right. The collection agency itself was told not to accrue any interest. Barclays, on the other hand, which is the account holder and owner, was still in accruing interest because that's what the contract provided for. The only way they would have stopped accruing interest would have been if they notified the debtor in accordance with the terms and conditions that they were no longer going to seek to do so. This is a suit against the collection agent, and the collection agent was not—and was sending letters, and the collection agent was not accruing interest. I understand you're saying that the debtor didn't know that and that that's the essence of your argument, but in answer to Judge Cabranes' question is that the collection agent who was sending the letters was not accruing interest. That would be correct. This is the problem, though, however, that this Court recognized in Avila, which is what happens next. Even if this agency was not collecting interest at this moment in time, it doesn't inform the debtor so that they could make an intelligent decision on which debts to prioritize the repayment of. If this debt came back to them and suddenly had all that accrued interest that was still running and they had failed to act, that would have been a poor decision on their part, but they weren't given that information. They weren't told what happens next. What was your client told? Why don't you describe that briefly for us? The client received four— What did he know and when did he know it? The client—well, there were two clients here, but we'll talk about one. Some have become interchangeable. They received a series of letters. The balance in the letter was consistent throughout the four series of letters. They weren't told what happens next. They weren't told that this was a change in the terms and conditions of their credit card agreement with the bank. Was your client told that if he paid X, whatever that sum was, that the debt would have been satisfied in full? They were provided offers of settlement with time limits with which to make those payments, and yes, I would believe that would be an accurate statement that had they made the payments in the letter, that would have satisfied the debt. But didn't those letters actually also say if they paid less, it would satisfy the debt? Well, they were— Suggestion. There were settlement offers. One was a payment plan with a subsequent, you know, we'll revisit it. No, they were not just told if you pay this amount, that will settle it. They were told a series of different ways in which they could settle. Right. Act now, because if you don't act now, something is going to happen. What is the something that is going to happen? That is the problem here. If nothing was going to happen, there's no sense of urgency to act now, and the implied threat that was present in the letter is inappropriate. Yeah, but what I'm trying to get at is was information given that at a certain point would have let them know that nothing was accruing. That's the question I'm trying to get at. The letters are devoid of anything discussing potential accruals, interest and fees. But would they be read by the reasonable, unsophisticated debtor so that they could understand that nothing was accruing? I don't believe so, Your Honor. What's the remedy that you're seeking from us? We think that the letters should contain an indication as to the questions that I pose to the court. What happens next? What happens if you fail to make these payments? What do we do for you? You mandate the inclusion of the safe harbor language in a discussion about whether or not there has, in fact, been a change in the terms and conditions between the debtor and its creditor, because that would be binding on the next creditor. It would answer the question of what happens in the sale to a debt buyer. It would be binding on the lawyer should it go to legal. We don't have that. Let me try to understand that. You would like us to say that when a debt that originally accrued interest was sold to somebody who did not accrue interest, this fact be made a part of any collection letter to the creditor. Debtor, is that what you're saying? Somewhat, yes, Your Honor. I'm sorry. Go ahead. Are you finished? I thought your complaint was that the letters failed to say explicitly, failed to advise the recipient that no interest would accrue. That's correct. Even if you are correct that under certain circumstances, under changes of conditions, interest would subsequently start to accrue, possibly if they went to a different collection agent or Barclays changed its mind or under a number of circumstances, you didn't argue for that in the district court. You didn't argue that the letters should say that under certain circumstances, interest might start to accrue even though it's not accruing now. No, we argue to the district court that by contract, interest is still accruing. There may be a willingness by the collection agency and the bank to accept less in a settlement, but that doesn't change the terms and conditions of the existing contract relationship between the parties. And unless there's a communication that does that, Barclays, as you said, can change its mind. For the time being, interest was not accruing. No, interest was not being collected. Interest was still accruing. The placement to the collection agency was a balanced amount, and they were instructed not to themselves accrue interest. This is not Barclays. This is the collection agency.  There are three different things you might be seeking and you might be trying to get from us. I want to be clear on which of these and which of these you argue to the district court. One would be to say that where interest is still accruing on the initial contract, but not on the sale, that information should be given to the debtor. Another is that if interest is now not accruing, for whatever reason, that must be told because that is a fact without which the debtor is hampered because they might settle this one when they should settle another one. A third one is that somehow these things are just not clear, and we don't know what you are asking us to do. But which of these is it, and which did you argue below? We argued your second point below, and we argue that today to this court. We are arguing today in answer to Judge Cabranes' question, as I rephrased it, that what you want to tell us is that you want the letter just to say when it is in the hands of a collection agent who is not accruing interest, that that should be told and that that would be enough. So which is it? Well, the court in Avila and the courts in the Seventh Circuit have consistently looked at this as informing the debtor what they need to know to make a payment decision. According to the Seventh Circuit, in an opinion by Posner, in a case analogous to this one, said it doesn't matter, didn't it? No, they've adopted the safe harbor language requirement on all debts that accrue interest. On all debts that accrue interest. But in a debt that didn't accrue interest, they said no need to say. Well, in a medical debt where state law prohibits the collection of interest and fees, it was not necessary. That's a recent decision from the court. Yeah, but that is still different from saying that when something does not accrue interest at all, you have to say. Well, instead, in answer to one of the questions, you say we should say that. Right. This is a credit card debt. So unless something changes, the least sophisticated consumer would always be under the impression, based on every experience they've had with the bank, that interest and fees continue to accrue. And if there's been a change in that condition, it needs to be communicated to the debtor, not by inference, not by suggestion, but by direct information and notice requirements. If we write on this and are not clear, we are putting collectors in a situation where they do the best they can, and then they get the kind of suit that puts them in any number of troubles against any number of people. And that we should not do. So it is not enough to say, oh, well, in this case it's a little bit confusing and therefore come out our way. We need to know, if we were to come out your way, what we can tell people so that they can practically live up to what is asked of them and not constantly be subject to suits. And, you know, I am kind of sympathetic to the notion that in this case there may have been some confusion. I'm not sure. But I'm not sympathetic to coming out that way and leaving the collectors in a position that we're just setting them up for another suit. Right, Your Honor. But they could communicate clearly to the debtor a couple of things. One, they could communicate during the course of the placement what the instructions were, what the balance will be in the future if the debtor fails to pay. They could also put in safe harbor language what happens next, which is a paramount concern to these debtors. What if I can't make the $500 payment you want tomorrow? Yeah, but how much do you want in any letter that collects that doesn't become so long and so confusing that it is actually no help? Well, I think that it would be fair to communicate that there's been a change in the contract between you and your bank, and we will not be charging or assessing any interest going forward. If that is the case, that is a very material element that the debtor is entitled to know. I don't think it would take all that much to communicate it. We're not talking about paragraphs. Perhaps that could be done in a single sentence. All right, thank you. We've given you substantially more time than we anticipated, but we're happy to do so, and you'll reserve one minute for rebuttal. All right. I'd like to reserve one minute as well. Yeah. Thanks. You don't get to reserve, but it's all right. You get the whole thing. Okay. Excuse me, Your Honor. Your Honors, I walked to the World Trade Center last night. I'm afraid I picked up a cold in the process. My name is John Boyle. I represent the Defendant Appelli. May it please the Court. You know, it's my experience that lawyers typically try to parse the words in a court decision that serves as precedent in order to divine the thinking and intentions of the justices in that prior decision, and we have that here with Avila. We have the unusual situation here where a justice who helped author Avila sits on this panel today and, therefore, I won't presume to lecture this Court on what I think the thinking or intentions of the Avila Court were. I don't know of it. I know mine. But I will respectfully attempt to offer a reasonable reading of that decision by a party, a debt collector, trying to uphold the law, trying to do the right thing, trying to not get caught in another snarl of technicalities who is impacted by the holding in Avila. In Avila, the Court was faced with a situation where the debt collector appeared to state the amount owed in a collection letter when, in fact, that wasn't true. It wasn't the case at all. As the Avila Court pointed out, the amount of the debt was actually changing daily because the debt collector was charging 500 percent interest. I think we'd all agree a rather outrageous amount of the amount. On top of the amount, it was reporting as due. So the concern of the Avila Court is, well, if the debt collector reasonably assumes I pay this amount, they could still be sued or chased by the debt collector for this extra interest that's been accruing they don't know about. And, in fact— But look, let's put aside Avila at the moment and ask the question of whether a person who is not sophisticated, who had a debt arrangement with a bank where interest would continue to accrue and get larger, gets one letter—and I'm talking about the first one—that says pay up and doesn't say interest is no longer accruing, does that person think that he'd better pay up fast or interest would accrue? Because if that person thinks that, when instead interest is no longer accruing, that person is misinformed because now it is in this person's interest not to pay this debt as against another debt. And that would be misleading, apart from Avila, apart from anything else, just on the fact that I thought I had to pay this or interest would accrue, or at least that that would be one possibility, and instead something has happened so that this debt is one that I can now put aside and turn to other debts. And so my question is, just simply, is that misleading? Because if it is, then perhaps there is a violation of this remarkably tough statute. I would suggest the opposite approach, which is, and I think even to quote the Avila court, even the Avila court recognized, is that the average unsophisticated consumer would assume the opposite, that they see a balance due and owing, a statement that says you owe, they would assume if they had paid that amount that they were taking care of the debt. And if you don't disclose that there's interest in other fees accruing, then that's where the deception occurs. That's where the improper language occurs. In our particular case, and this really comes down to a question as, and debt collectors are very interested in knowing how the court thinks on this, what are the magic words? What needs to be said so a debt collector— Let me put it a different way. Suppose you have somebody who is a little bit more sophisticated and knows that under the original debt interest is accruing. Well, I think there could be an assumption by some consumer that interest would be accruing. But if the statement which is set, and in this case the initial statements all talked about the amount of the charge off, the balance due, it had a current balance stated on each of three coupons, and in the body of the letter it said you owe the specific amounts. Now, someone could try to construe that, boy, they might not be covering anything, but I would argue that the unsophisticated consumer would say, looking at that based on that language, if I pay this amount, you know, I'm taking care of the debt. And, in fact, that goes to the issue of the FDCPA. The FDCPA is to prevent abuses in debt collection practices. But would they conclude if they paid that amount three months from now or a year from now, that would be the amount? Now, when they get a second letter that says the same thing, they might get a, you know, they might start understanding that it doesn't go up. But on the first letter, is that misleading? We would argue no. The court in Avila gave the, you know, the clause that could be provided, and one of the examples in the court said there's no particular wording that we're recommending, but it did give an example from another court where the collection letter would say you owe X amount, so much is the principal, so much is interest, so much are fees. The interest will accrue at the rate of X percent per day or per month or whatever it said. In this case, if we put that out there, we'd either say there is no interest or it accrues at 0% interest. Your adversary is arguing, if I understand correctly, that while for the time being no interest was accruing, because the collection agent had been instructed by the bank not to accrue interest, that under certain circumstances in the future interest could start accruing again. And it's not clear to me whether his argument is that even the interest for the present period could accrue again or that it could start to accrue at a later date if the bank took back the debt from the collection agent and transferred to a different one. So is he correct in that regard? Is he correct that the interest could start accruing again despite the fact that it was now not accruing pursuant to the bank's instructions to the collection agent? And if that's true, is that adequately and fairly disclosed in compliance with the Act? I would respond in two ways. Number one is, under the facts of this particular case, there was direct evidentiary material put in by sworn affidavit that there was no interest accruing, including from the bank. But what about whether there would be, whether there might be in the future? Well, this goes to your question, Your Honor, earlier where you were asking about what happened at the court below. This issue wasn't raised on the main arguments but instead on the reply in which plaintiffs submitted sample examples of what the credit agreements looked like, not the actual agreements. In the reply here or in the district court? In the district court. But apart from what was argued in the district court, I'd like to hear the answer to Judge LaValle's question about whether on the facts of this case, would it be possible under some circumstances for this debt to be given either back or to some other party and have interest start accruing again? Two things, two ways I approach that. One is, the question is, is this debt collector liable or potentially liable for misrepresentation? Here they're stating fact. There's no misrepresentation. Answer the question. Right, right. We'll decide the law. Oh, I understand. Answer the question. Okay. So, all right, let's assume, if I follow what you're asking, let's assume that the debt collector is unsuccessful in collecting a debt. It's returned to the bank and the bank assigns, if the bank is still the owner of the debt and assigns it to a new debt collector, it would then be the bank's prerogative to decide what they're going to do. They could even dishonor the fact that they waived interest. In other words, they could start raising interest again. Theoretically, yes, because we don't have any control over them. But we have control over what we're doing in this particular case, and if the plaintiffs had paid that particular amount in full, the debts would have been wiped out. But then what is your response, then, to the proposition that these collection letters failed to advise the recipient of the fact that, while interest is not accruing for the moment, it could start to accrue in the future on some facts? Theoretically, yes. Well, it's not just theoretically. I mean, it could. You're acknowledging that it could. Well, to go to the point one of you made earlier, at what point do these letters become so complicated that an unsophisticated investor can't even read through it without having to hire you? It's not so complicated to say. It's not very complicated to say. For the time being, interest is not accruing. And as set forth, if you pay these amounts at these times, you can satisfy the debt. However, interest could resume accruing again. If that's the direction the court wants to give. No, I'm just asking you. That's not such a complicated thing to say or to understand. Right, as long as the debt collectors know that that's what complies with the law. And, by the way, if we were to find that there was a violation because it was a straight violation of Avelia of not letting a person know that interest might accrue, we might be able, at the same time, in dicta, to make clear what would happen in a situation where no interest could accrue, and whether that ought to be known so that debt collectors in the future would be aware of what they could do and be safe. That is, it would be particularly easy to make life easier for all of you if we found this is actually a violation of Avelia, but let's give you some more information which helps you in future cases. Well, here's the challenge with the Avelia reading and the challenge in terms of debt collectors reading it. It basically said that if debt, it explained in this particular situation that interest was accruing and that wasn't disclosed. And it warned, essentially warned, debt collectors that you have to say more than just the amount of the debt. If interest is accruing, you have to disclose that. We're trying to take this another step and say debt collectors have to affirmatively state in the language, whatever magic language they use, that there is no interest accruing. We're not saying that at the moment. I'm just still with Judge LaValle's situation that you haven't in this case said that interest might accrue in the future. And that's a different thing. Then, if that was so, we could use that as an occasion to tell you what you can do to be okay, or we might not. Well, in this particular case, the interest would not accrue while in the hands of this debt collector. There's no way it could misrepresent that. But now, you started to say earlier, if I understood you correctly, that the issue that Judge Calabresi and I are now asking you about was not properly before the district court? Is that? Well, what I'm saying is that issue was not the, in fact, at the initial motion papers, when the initial motion papers were filed, the plaintiffs basically said the issue of whether the statements discussed interest are irrelevant or whether they're accurate is irrelevant. Instead, what they were arguing was just for a blanket proposition that if interest isn't accruing, that you should disclose that. So the plaintiff never argued to the district court? Are you saying the plaintiff didn't argue to the district court that if interest was not accruing now, but might start to accrue depending on changes in the facts, might start to accrue at a future time, that the letter has got to say that? It's my understanding that they raised that on the reply brief, and that's when they filed . . . The reply brief to the summary judgment? To the summary judgment motion. And the district . . . To which we didn't have an opportunity to respond. And the district court didn't deal with that at all? Did not deal with that. So you're saying this issue is not properly raised on appeal? In terms of us having an opportunity to respond to it, that's correct, Your Honor. Well . . . And the specimens were introduced as part of the reply brief, the bank specimens of the credit agreements, and not as part of the position in Maine. Let me be clear. If the issue was raised in the reply brief, so that it was raised to the district court, and then the district court decides your way on other grounds, is that something we can deal with on appeal or not? I mean, you know, it was before the district court in a way. The district court ruled for you on other grounds. So, of course, you didn't have a chance to reply to it, but is that something we can deal with on appeal or not? Or do we send it back for consideration of that issue? I mean, what do we do just procedurally in a situation like that? Well, let me raise a broader issue just for you to consider in answering that. That is, this is really going to complicate the debt collection industry if debt collectors have to go and get the original documentation, or they have to get a waiver. We understand that. Right. I don't know. I'd like some help, maybe because I've never been a district judge, with what we do procedurally in a situation like that, in the situation that Judge Lavelle has focused on. I mean, the danger, just to finish my little point here, the danger is that you're going to turn every collection case into a fact dispute if you have to look at what's the documentation for the waiver. Your Honor, I honestly have not faced that situation. I don't know that. Typically, the rules for appellate court procedure, that if a matter is not properly raised at the trial court where the other party gets a chance to respond, then it's not up on appeal. I mean, it's an issue that they've raised. They put in these specimens of bank documents that were exemplars. They were not the particular documents that these people signed. Is it clear on these facts that interest might start to be charged again in the future? I mean, if you have a circumstance where the original debt agreements, the credit card agreement, provides for interest and penalties and stuff like that, and the bank then turns it over to an agent, an agent for the bank to collect the debt, and the bank instructs the agent, tell the debtor, no interest, no penalties, this is the amount of the debt. Can the bank then subsequently start to charge interest again, or has the ability to do that been essentially waived? Well, under the facts of this case, we put in affidavits from representatives of both banks indicating that there was a charge-off amount, that no interest was accruing or would accrue. No interest would accrue. That was my understanding, without having to carefully parse the language of the affidavits. Affidavits were put in. I mean, they were basically presented as this is a done deal. This is the amount. This is all that you're to collect. Then the facts before the district court, unless there was an issue about them, then that established that no interest would accrue. I believe the trial court even mentioned that in its opinion. But there wasn't the issue of the court did not address the issue of what do the exemplars say, and the plaintiffs put in affidavits saying we don't know if interest is accruing or not. They didn't put in affirmative evidence. But there's one thing about the hypothetical of Judge LaValle that is different from this case. That is, if the bank told the collection agent, tell the parties that no interest will accrue, did the debt collection agent tell the parties that no interest are currently now accruing? In that first letter. I mean, you know, the later letters might have indicated that, but the first letter doesn't. I would not go so far as to say that the affidavits from the bank said don't collect interest. What they did was we were trying to establish a factual history to show that when the debts were assigned, there was a charge-off, which means that typically in bank industry that becomes a static amount, that no interest had accrued since that time and no interest was continuing to accrue. Thanks, Mr. Boyle. Thank you, Your Honors. One minute for Mr. Sentence. Yeah, I just have a couple of quick points. On a procedural note, there was a motion by the defendant and there was a cross motion by the plaintiff for summary judgment. There were full motion opposition replies on both motions. There was a request by the defendant to submit a surreply, which was denied by the court. So this was all presented to the court below and everything is preserved for appeal by this court. You say that when you made this point, defendant asked to reply and it was the court that said no. Correct, Your Honor. I do think that there is. You didn't make the motion initially. You didn't make this point in your motion. You didn't make the point that the letter failed, was defective, because it failed to say that interest could accrue in the future. We were consistent, Your Honor, in saying that interest has remained accruing throughout this process. The only thing that was static was what the instructions were to the collection agency. That's been the plaintiff's position consistently throughout this, that there's been no material change to the contract in terms and conditions or information communicated as required by law to the debtor. Was your argument to the district court that what was defective about the letter was the failure to make clear that no interest was accruing? If that's the case, if the bank has changed its position and no interest is accruing . . . this letter was deceptive because it failed to state clearly to the plaintiff that no interest was accruing. That's correct if the underlying premise is correct, meaning if the bank has now decided not to collect interest now and into the future, they needed to communicate that to the debtor. The question is were two arguments made or only one argument made? One argument, which you clearly made, is they should have said that no interest is accruing if no interest is accruing. Fine. You made that argument. The other argument, and we're trying to find out if you made it to the district court, was look, no interest seems to be accruing now and that might be okay, but you have to tell us that interest might accrue in the future. And what we're trying to get at is whether you made that argument to the district court. We did, Your Honor. We raised the exact points raised by this Court in the . . . When? In the motion practice. We cited two . . . In the motion practice? In our motion for summary judgment, Your Honor. Your motion for summary judgment affirmatively said that the letter was misleading for failure to state that while interest is not accruing now, it might start to accrue in the future. Yes. It acknowledged the possibility that interest was not, in fact, accruing, but similar to the language of this court in the Villa, what happens in the future? What happens next? That issue was raised by the plaintiff. And just in closing, Your Honor . . . We'll check that ourselves in the record. Yes. Just a quick point on the summary judgment itself. Please. Very quick. There were clearly issues of fact between two different proffers, the one by the defendant and the one by the plaintiff, as to the issue of interest, which the court necessarily decided in the defendant's favor in rendering its decision. So, in the event that we're not clear on the issue of the Villa, we would like to fall back on that issue for this Court's consideration. Thank you very much. Ruby Zhu. Can I have ten seconds just to correct this? Go ahead. All right. Your clerks, obviously, will be able to confirm this. It's my understanding that the defendant filed a . . . sent a letter to the court asking to file a short reply brief. It's my understanding the court never ruled on that and instead issued the decision on summary judgment. Thank you. All right. We'll reserve the decision and we'll hear . . .